THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ZAYO GROUP, LLC   *1805 29th Street,*
                   *Suite 2050*
   Plaintiff,       *Boulder CO 80301*

   v.

NATIONAL RAILROAD PASSENGER CORP.
d/b/a AMTRAK; JOSEPH H. BOARDMAN;
and ELEANOR D. ACHESON

   Defendant.   *60 Massachusetts Avenue, NE*
                *Washington, DC 20002*

Case: 1:15-cv-00677
Assigned To : Mehta, Amit P.
Assign. Date : 5/1/2015
Description: TRO/PI (D)

## COMPLAINT

Plaintiff Zayo Group LLC ("Zayo") files this Complaint for damages and injunctive and declaratory relief against Defendants National Railroad Passenger Corp. d/b/a Amtrak, Joseph H. Boardman, and Eleanor D. Acheson (collectively "Amtrak"), and alleges as follows:

## INTRODUCTION

This lawsuit centers on the bullying and unlawful – indeed, unconstitutional – tactics of the long failed public enterprise, the National Railroad Passenger Corporation, a.k.a., Amtrak, fraudulently to take control of and convert the communications network of Zayo Group, LLC ("Zayo") constructed along the railroad's public rights of way.

Under long standing license agreements, Zayo, a global telecommunications provider, has compensated Amtrak handsomely for use of public rights of way that it maintains in order to construct and operate a communications network that serves our Nation's telecommunications carriers and enables them, in turn, to deliver critical communications services to their customers, including life-saving 911 service. Zayo has invested millions in its network in reliance on

reasonable access to Amtrak's public rights of way and facilities, and, having done so, it is now effectively captive: It would be prohibitively expensive, inefficient, and impractical for Zayo to "rebuild" its network elsewhere and it and its customers would suffer severe service disruptions were it required to do so.

The initial term of the parties' right of way license agreement governing Zayo's network constructed along Amtrak's Philadelphia to Harrisburg line is set to expire immediately, and approximately six months ago, in accordance with the parties' longstanding practice for renewals, Zayo triggered the renewal provision in the agreement.  Yet, unlike Amtrak's cooperative conduct with respect to renewal of other right of way agreements between the parties, Amtrak has denied Zayo's notice of renewal and engaged in deceptive and untoward maneuvering to wrest control of Zayo's network away from it to prop up its own communications network.  Thus, while encouraging Zayo to engage in negotiations over a renewal agreement, it has rejected all of Zayo's reasonable and good faith proposals while refusing to put forward any proposed agreement or counter-propose any terms of its own. Instead of working to reach a renewal agreement for Zayo to continue to provide critical communications services, Amtrak has made its true intentions pellucidly clear:  It intends to assert title to and dominion and control over Zayo's network at the stroke of midnight tonight.

If Amtrak were to succeed in its plan to take over Zayo's network, it would cause Zayo immediate, catastrophic, and irreparable harm.  Amtrak's actions would cripple Zayo's communications network and prevent Zayo's customers from providing essential communications services to consumers throughout the region – some of whom would be denied access to fundamental and life-saving emergency services, including 911 services.  Zayo will not be able to abide its contractual commitments to its customers and millions will immediately be

without critical communications services.  In addition to the irreparable harm caused by this loss of service, Zayo will suffer irreparable harm to its reputation and good will.  Amtrak's conduct would significantly damage Zayo's relationships with its customers that would lose the ability to provide communications services to end users, prevent Zayo from meeting its contractual commitments to customers, and harm Zayo's good will, reputation, and standing in its industry.

But Amtrak has no right to inflict any of these harms on Zayo, or to take over its network, and its conduct is plainly unlawful.  It is in clear breach of contract of the parties' right of way license agreement and flouts the duty of good faith and fair dealing inherent in that agreement.  Amtrak's actions also constitute conversion and fraud, as well as violate multiple federal laws – including the federal Communications Act – and constitutional provisions.  Amtrak's conduct is in violation of Zayo's constitutional right to due process and protection from the taking of its property without just compensation.

Zayo therefore reluctantly files this action, after months of attempting to negotiation without reciprocation, to curb the railroad's abusive conduct and unlawful actions and obtain all appropriate relief, including damages and injunctive and declaratory relief, for its wrongful and unconstitutional actions.

## PARTIES

1.    Plaintiff Zayo is a global provider of bandwidth infrastructure services.

2.    Zayo is a Delaware limited liability company with its principal place of business in the State of Colorado.  Zayo's members, and the members of its members, are not citizens of the District of Columbia and do not have their principal places of business in the District of Columbia.

3.       Communications Infrastructure Investments, LLC, is the ultimate parent of Zayo. Communications Infrastructure Investments, LLC, is a Colorado limited liability company with its principal place of business in the State of Colorado.  Communications Infrastructure Investments, LLC's members are not citizens of the District of Columbia and do not have their principal places of business in the District of Columbia.

4.       Defendant the National Railroad Passenger Corporation -- a.k.a., Amtrak – is a District of Columbia corporation with its principal place of business in the District of Columbia. Amtrak was created as a corporation by special law, to carry out government objectives, is overseen by the federal government, which retains permanent authority to appoint a majority of that corporation's directors, and is for all intents and purposes a part of the government.

5.       Defendant Joseph H. Boardman is the President and CEO of Amtrak.

6.       Defendant Eleanor D. Acheson is the Vice President, General Counsel and Corporate Secretary of Amtrak.

7.       It is an open but tragic secret that Amtrak is a *failed* enterprise; it has and continues to lose substantial amounts of federal taxpayer funds every year that it operates. Indeed, Amtrak has lost money every single year for more than **_40_** years.  Given this profound track record of failure, it is therefore desperate to locate additional sources of revenue including from contracting partners such as Zayo, even if it means engaging in improper, bad faith, and extortionate tactics.

## JURISDICTION AND VENUE

8.       The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Zayo alleges violations of federal law.

9.      The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the controversy is between citizens of different states and the matter involved exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     The Court has supplemental jurisdiction over Zayo's state law claims pursuant to 28 U.S.C § 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Amtrak is located in this District, events giving rise to this action occurred in this District, and the Agreement in question was executed and performed in this District.

## FACTUAL BACKGROUND

### The Parties Right-of-Way-License Agreement

12.     On May 1, 2000, Zayo's predecessor in interest, GPU Telecom Services, Inc. ("GPU"), entered a Railroad Right-of-Way License Agreement ("Agreement") (attached as Exhibit ("Ex.") 1).

13.     Zayo subsequently assumed GPU's rights and obligations under the Agreement.

14.     The Agreement governs Zayo's ability to construct, install, and operate fiber wires on poles located along Amtrak's Philadelphia to Harrisburg railroad line. *See* Ex. 1 at A.

15.     Zayo has invested millions to own and maintain its facilities along the Philadelphia to Harrisburg route and has entered numerous agreements to provide services to customers over this portion of its network.  Having made this substantial investment, Zayo is "captive" on Amtrak's facilities along this corridor:  It would be prohibitively expensive, time consuming, inefficient, and impractical for it to reconstruct its communications network elsewhere, and it would cause severe disruption to its operations and those of its customers were it forced to do so.

16.     Zayo's network along the Philadelphia to Harrisburg route provides communications to other communications providers, including carriers providing cellular telephone service.  These carriers in turn use Zayo's communications services to meet the critical communications needs of their customers, including hospitals, financial services institutions, and public safety organizations.   On information and belief, the carriers serve millions of customers between Philadelphia and Harrisburg.

17.     Amtrak itself is a Zayo customer on this route.

18.     The Agreement provides that the initial 15-year term of the Agreement expires on May 1, 2015, at 11:59 p.m. Eastern Standard Time. *See id.* § 3.1.

19.     However, Zayo has the option "to renew and extend" the Agreement for one additional fifteen year term that begins on May 1, 2015. *See id.*  To exercise that option, Zayo need only provide Amtrak notice of its intent to renew the Agreement.

20.     Zayo has multiple similar agreements with Amtrak that it has renewed.

21.     To exercise its renewal option, Zayo must give Amtrak notice of its intent to renew "not earlier than twelve (12) months and not later than six (6) months prior to" May 1, 2015. *Id.* § 3.4.

22.     The renewal window for this Agreement extended from May 1, 2014, to November 1, 2014.

### Zayo Notified Amtrak Of Its Intent To Renew The Agreement

23.     In September 2014, Zayo began the process of renewing the Agreement with Amtrak.  On October 24, 2014, Zayo notified Amtrak of its intent to renew the Agreement.  At the same time, however, Zayo also sought to ensure that Amtrak did not require any additional information for the renewal agreement.. *See* Ex. 2.

24.     Zayo followed precisely the same approach for renewing this Agreement as it had, per Amtrak's instruction, to renew other agreements.

25.     In connection with the renewal of other similar railroad right-of-way agreements, Zayo sent Amtrak similar notices of intent to renew, which the parties used to create renewal agreements that the parties then entered.  *See* Ex. 3-4.

26.     Prior to November 1, 2014, Zayo therefore provided Amtrak notice of its intent to renew the Agreement and also to enter a renewal Agreement. And prior to November 1, 2014, Amtrak never asserted that Zayo's notice in any way failed to comply with Section 13.1 of the Agreement.  Instead, the parties understood that Zayo's notice sufficiently laid the groundwork for the parties to negotiate a renewal Agreement.

### Amtrak Acts In Bad Faith To Breach The Parties' Agreement And Improperly Convert Zayo's Communications Network.

27.     On December 11, 2014, long after the renewal period had run and after Zayo had duly provided notice of its intent to renew, Amtrak informed Zayo that it had failed to renew the Agreement.  This notification was inconsistent with and represented a sharp break from the parties' prior course of dealing in which they had worked constructively on the renewal of existing right of way agreements.

28.     Instead of working cooperatively here, however, Amtrak maneuvered to wrest control over Zayo's network while feigning an interest in good faith negotiations over a renewed Agreement.  Thus, while during the ensuing months, Zayo submitted numerous proposals for a renewed agreement to Amtrak at its invitation, Amtrak repeatedly rejected Zayo's proposals without ever making *any* counterproposal.

29.     On December 11, 2014, Zayo provided Amtrak with a proposal for renewal of the Agreement.  This proposal was based on a renewal agreement that Amtrak and Zayo had entered after the close of a renewal window for pertaining to that Agreement.

30.     In December, Amtrak expressed its willingness to "work together" to move Zayo's renewal proposal forward.  *See* Ex. 5.

31.     In January and February 2015, Zayo provided Amtrak with a supplement to its proposal for renewal with additional supporting documentation.

32.     Several weeks later, in February, Amtrak responded to Zayo's renewal proposal. Zayo and Amtrak discussed the proposal, and in response to these discussions, Zayo sent Amtrak an updated draft renewal proposal on February 18, 2015.  Zayo marked the proposal as a draft and hoped to engage Amtrak in meaningful discussion of the terms of a renewal agreement.

33.     On February 25, 2015, Amtrak rejected Zayo's draft proposal for continuation. Amtrak represented for the first time that the draft proposal letters Zayo had been sending Amtrak since October were insufficient to meet Amtrak's demand for a proposal to renew the Agreement, although it never provided any indication of acceptable terms.

34.     Instead of proposing a constructive path forward, Amtrak made clear its intentions to take over Zayo's network upon termination of the Agreement:

> [U]nless otherwise agreed in writing by Licensor and Licensee, the Agreement terminates on May 1, 2015.  Upon the expiration of the Agreement, Amtrak takes title to the Facilities (Agreement Section 4.2).  The Facilities include all installations made on the Right –of-Way (situated between Philadelphia to Harrisburg, PA) pursuant to the Agreement, including (without limitation) the PHL-HBRG FOG Wire, all Interconnects, regeneration facilities and installations made part of the Facilities through amendments and/or supplements to the PHL-HBRG Agreement.

> So that all interested parties are prepared for the expiration of the PHL-HBRG Agreement, please: (i) make arrangements to have all non-Amtrak uses of the Facilities discontinued by May 1, 2015; and (ii) provide Amtrak with dates during the week of April 27th when Licensee's representatives will be available to meet on site to: (a)

confirm that Licensee has ceased all non-Amtrak operations on the Facilities; and (b) tag all parts of the Facilities as belonging to Amtrak.  This meeting should cover the locations of all parts of the Facilities Amtrak will advise Licensee if Amtrak requires any further documentation confirming Amtrak's title to the Facilities.

35.     Amtrak included this statement in all of the relevant correspondence with Zayo.

36.     In response to Amtrak's February 25 letter, Zayo hosted a conference call with Amtrak to discuss Amtrak's concerns with Zayo's renewal proposal on March 2, 2015.

37.     During the call, Amtrak represented that it would work with Zayo to renew the Agreement subject to new market rate terms with respect to the licensing fees Zayo pays Amtrak. Amtrak also represented that Zayo need not obtain an independent assessor to calculate market rates.

38.     Based on its March 2 conference with Amtrak, on March 5, Zayo submitted a modified proposal for renewal to Amtrak, providing for a substantial increase over the annual licensing fee that Zayo paid in 2015.

39.     On March 6, 2015, Amtrak rejected Zayo's proposal and levied the same threat against Zayo's network it made in its February 25 letter – that it intended to take over its communications network.  *See, supra,* ¶ 26.  But Amtrak failed to provide any counterproposal or to set forth clearly what it expected from Zayo in a subsequent proposal.

40.     Amtrak's rejection letter also misrepresented the content of the March 2 conference call.

41.     On March 9 and 10, Zayo conferred with Amtrak regarding the March 6 letter. Amtrak continued to express willingness to work with Zayo on a renewal of the Agreement.

42.     During these discussions, Amtrak again represented that Zayo need not obtain an independent assessor to calculate market rates.  Amtrak suggested that Zayo consult existing agreements with Amtrak to guide right of way fees.

43.   At the same time, Zayo represented that it would provide Amtrak with another proposal but also asked Amtrak to make a counter-proposal if Zayo's proposal proved unsatisfactory.

44.   On March 19, Zayo provided yet another proposal to Amtrak.

45.   On March 25, Amtrak again dismissed Zayo's proposal and refused to provide a counter-proposal.  Amtrak also continued to misrepresent the content of Zayo's discussions and understandings reached with Amtrak during those conversations regarding its proposal for continuation.  Amtrak levied the same threat against Zayo's network it made in its February 25 and March 5 letters.  *See, supra,* ¶¶ 26, 30.

46.   During the many months during which Zayo made repeated proposals to renew the Agreement and sought counterproposals from Amtrak, Amtrak made not a *single* proposal whereby Zayo could continue to use and maintain its facilities along the Philadelphia to Harrisburg route.  The reason is clear: Rather than enter into a commercial agreement with Zayo, Amtrak sought wrongly to convert Zayo's network and use it for its own communications purposes.  Amtrak has indeed made clear that it intends to convert Zayo's network at 11:59 p.m. on May 1, 2015.

47.   If Amtrak's plan succeeds, it will cause Zayo immediate and catastrophic harm.  Amtrak's actions would cripple Zayo's communications network and prevent Zayo's customers from providing essential communications services to consumers throughout the region – some of whom would be denied access to fundamental and life-saving emergency services, including 911 services.

48.   Zayo will not be able to abide its contractual commitments to its customers and millions will immediately be without critical communications services.

49.     In addition to the irreparable harm caused by this loss of service, Zayo will suffer irreparable harm to its reputation and good will. Amtrak's conduct would significantly damage Zayo's relationships with its customers that would lose the ability to provide communications services to end users, cause Zayo to lose customers to its competitors, and harm Zayo's good will in the industry.

50.     Zayo will suffer substantial damages as a result of Amtrak's conduct and the loss of its network in which it has invested millions.

## COUNT I

### (Breach of Contract)

51.     Zayo incorporates by references the allegations contained in Paragraphs 1 – 38 as if fully restated herein.

52.     Section 3.1 of the Agreement gives Zayo the "option to renew and extend" the Agreement for an additional term of 15 years.  Ex. 1.

53.     To exercise its option to extend the Agreement, the Agreement required Zayo to provide "notice of such intent" to extend the Agreement between May 1, 2014, and November 1, 2014.  *Id.* § 3.4.

54.     Zayo provided notice of its intent to exercise its option to renew and extend the Agreement on October 24, 2014.  *See* Ex. 3.

55.     Zayo's October 24 notice clearly indicated Zayo's intent to renew the Agreement and comported with notices that Zayo had provided Amtrak in connection with numerous other agreements.  Amtrak had both actual and constructive notices of Zayo's intent to renew the Agreement.

56.     Amtrak did not indicate that Zayo's notice of intent was deficient prior to November 1, 2014, the deadline for providing notice of an intent to renew.

57.     Upon receipt of Zayo's intent to renew and extend the Agreement, the Agreement was renewed automatically. *See, e.g.*, Ex. 1 § 3.

58.     Despite receipt of Zayo's intent to renew the Agreement, Amtrak refused to comply with its obligation to renew and extend the Agreement.

59.     Amtrak instead notified Zayo that it would consider the Agreement terminated on May 1, 2015. And Amtrak stated its intention to take title to Zayo's communications network at that time and deprive Zayo of its ability to provide service to its customers.

60.     Amtrak's refusal to comply with the Agreement would cause Zayo substantial and irreparable harm. Among other things, it would cost Zayo millions of dollars in lost investment on its network, cause loss of critical and public safety communications services to millions, prevent Zayo from meeting its contractual commitments to customers, and cause lasting and irreparable harm to Zayo's reputation and good will in the industry.

61.     Amtrak has breached Section 3 of the Agreement by refusing to allow Zayo to renew and extend the Agreement.

62.     Zayo has been and will continue to be harmed by Amtrak's contractual breaches.

63.     Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's breaches of contract.

## COUNT II

### (Breach of the Implied Duty of Good Faith and Fair Dealing)

64.     Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

65.     An implied obligation exists in every contract to perform the contract consistent with justified expectations of the other party and with the spirit of the contract.

66.     Amtrak breached this obligation by denying Zayo's renewal of the Agreement and attempting to convert its network.

67.     Amtrak further failed to comply with its obligations of good faith and fair dealing by refusing to notify Zayo prior to November 1, 2014, that it considered Zayo's good faith attempts to notify Amtrak of its intent inadequate.

68.     Amtrak further failed to comply with its obligations of good faith and fair dealing by falsely representing that it would work with Zayo to correct the alleged error that Amtrak perceived in the actions Zayo took to renew and extend the Agreement after November 1, 2014, when it had no intention of renewing the Agreement on any terms and instead sought to convert Zayo's network.

69.     Amtrak's actions breached the implied covenant of good faith and fair dealing arising out of the Agreement.

70.     Zayo has been and will continue to be harmed by Amtrak's contractual breaches.

71.     Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's breaches.

## COUNT III

### (Breach of Quasi-Contract)

72.     Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

73.     To exercise its option to extend the Agreement, the Agreement required Zayo to provide "notice of such intent" to extend the Agreement between May 1, 2014, and November 1, 2014. *Id.* § 3.4.

74.     Zayo provided notice of its intent to exercise its option to renew and extend the Agreement on October 24, 2014.  *See* Ex. 3.

75.     Zayo's October 24 notice clearly indicated Zayo's intent to renew the Agreement and comported with notices that Zayo had provided Amtrak in connection with numerous other agreements.

76.     Amtrak did not indicate that Zayo's notice of intent was deficient prior to November 1, 2014, the deadline for providing notice of an intent to renew.

77.     Upon receipt of Zayo's intent to renew and extend the Agreement, a quasi-contract between the parties was created.

78.     Zayo conferred a valuable benefit on Amtrak by paying for the use of the right of way on which its network is constructed.

79.     Amtrak obtained and appreciated the benefit that Zayo conferred.

80.     But Amtrak now purports to deny Zayo use of the rights of way and assert title to Zayo's network without any compensation.

81.     Amtrak's refusal to comply with the Agreement would cost Zayo millions of dollars in lost investment on its network, cause irreparable harm in the form of the loss of critical communications services to millions, prevent Zayo from meeting its contractual commitments to customers, and cause lasting and irreparable harm to Zayo's reputation and good will in the industry.

82.     Amtrak's actions breached the parties' quasi-contract.

83.     Zayo has been and will continue to be harmed by Amtrak's breaches.

84.     Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's breaches.

## COUNT IV

### (Violation of Federal Communications Act, 47 U.S.C. § 214)

85.     Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

86.     The Communications Act of 1934 gives the Federal Communications Commission power to issue a license for the right to provide service along any telecommunications line.  *See* 47 U.S.C. 214(c).

87.     Zayo holds a license pursuant to Section 214 authorizing it, among other things, to construct, extend, and operate its telecommunications network along the Philadelphia to Harrisburg line.

88.     The Act also provides that "any construction, extension, acquisition, operation, *discontinuance*, reduction, or *impairment of service* contrary to the provisions of this section may be enjoined by any court of competent jurisdiction at the suit of . . . any party in interest." 47 U.S.C. 214(c) (emphasis added).

89.     Amtrak's purported conversion of title to Zayo's network would prevent Zayo from providing communications services under its Section 214 license.

90.     Amtrak's actions are wrongful, unlawful, and in violation of Section 214 of the Federal Communications Act.

91.     Zayo has been and will continue to be harmed by Amtrak's violation of 47 U.S.C. § 214(c).

92.    Zayo is entitled to injunctive and declaratory relief in addition to monetary damages to remedy Amtrak's violation of the Federal Communications Act.

## COUNT V

### (Violation of the Federal Due Process, U.S. Const. Art. V)

93.    Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

94.    47 U.S.C. § 214 gives telecommunications providers holding a license under Section 214 the right to operate a telecommunications network free from any discontinuance or impairment of service.

95.    The Fifth Amendment of the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

96.    Amtrak is a state actor and its brazen efforts to convert, take title to, or interfere with Zayo's network constructed along the Philadelphia to Harrisburg line and to destroy Zayo's ability to provide communications services to its customers without due process of law would impair Zayo's vested property right in violation of the Fifth Amendment.

97.    Zayo has been and will continue to be harmed by Amtrak's violation of its due process rights.

98.    Zayo is entitled to injunctive and declaratory relief in addition to monetary damages to remedy Amtrak's violation of our federal constitution.

## COUNT VI

### (Unconstitutional Taking, U.S. Const. Art. V)

99.    Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

100.    The Fifth Amendment of the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

101.    Amtrak is a state actor and intends to take title to Zayo's equipment, facilities, and other network infrastructure without compensation.

102.    Amtrak has no lawful authority to take title to Zayo's communications network without compensation.

103.    Amtrak's taking of title to the network would destroy Zayo's investment in and ability to use the network to provide service to its own customers or otherwise make use of the network.

104.    Amtrak's conversion of title to the network is an unlawful taking of Zayo's property for public use without just compensation in violation of the Fifth Amendment.

105.    Amtrak acted under the color of federal law when it deprived Zayo the rights, privileges, and immunities it is entitled to under the Fifth Amendment.

106.    There is no adequate federal or state law remedy to redress Amtrak's unlawful taking of Zayo's network.

107.    Zayo has been and will continue to be harmed by Amtrak's violation of its procedural due process rights.

108.    Zayo is entitled to injunctive and declaratory relief in addition to monetary damages to remedy Amtrak's constitutional violation.

## COUNT VII

**(Violation of 42 U.S.C. §§ 1983 and 1988/*Bivens v. Six Unknown Fed. Narcotics*, 403 U.S.**

**388 (1971))**

109.     Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

110.     Zayo has rights privileges, and immunities by virtue of 47 U.S.C. § 214(c) because Zayo is a member of the class protected by the statute and federal constitutional law. The Constitution and laws of the United States secure these rights, privileges, and immunities.

111.     47 U.S.C. § 214(c) confers an express private right of action on "any party in interest" to redress violations of the statute.

112.     Amtrak acted under the color of law when it threatened to deny Zayo the rights, privileges, and immunities granted by 47 U.S.C. § 214(c) by converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and interfering with Zayo's telecommunications network and its ability to provide communications services to its customers.

113.     Zayo has a vested property right in its ability to use its Section 214 license, which gives it the right to construct and maintain its telecommunications network, to provide telecommunications service along the Philadelphia to Harrisburg line.

114.     Amtrak acted under the color of law when it acted to deprive Zayo of the rights, privileges, and immunities granted by 47 U.S.C. § 214(c) by interfering with Zayo's telecommunications network and its ability to provide communications services to its customers.

115.     As a direct and proximate result of Amtrak's violations of 47 U.S.C. § 214(c) and the Fifth Amendment to the U.S. Constitution, Zayo has suffered harm that cannot be remediated at law, including monetary losses and deprivation of its rights.

116.     Zayo is entitled to recover damages from Amtrak in an amount determined at trial.

117.     Zayo is also entitled to its attorneys' fees under 42 U.S.C. § 1988.

118.     Unless and until Amtrak is enjoined by the Court, Amtrak will continue to deprive Zayo of its civil and constitutional rights.  Accordingly, Zayo is entitled to injunctive and declaratory relief in addition to monetary damages to remedy Amtrak's violations.

## COUNT VIII

### (Conversion)

119.     Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

120.     Zayo properly holds all rights and title to the equipment, facilities, and infrastructure comprising its communications network along the Philadelphia to Harrisburg line.

121.     Amtrak purports to exercise ownership and control – and indeed to take title to – Zayo's communications network.

122.     Amtrak has no lawful or contractual right to take ownership or control of Zayo's network.

123.     Amtrak's exercise of ownership or control over Zayo's network is an attempt to deny and repudiate Zayo's lawful right to its network.

124.     Amtrak committed conversion by exercising ownership and dominion and control over Zayo's network in an attempt to deny Zayo's right to its property.

125.    Zayo has been and will continue to be harmed by Amtrak's conversion.

126.    Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's conversion.

## COUNT IX

### (Tortious Interference with Business Relations)

127.    Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

128.    Zayo has contractual and business relationships with many telecommunications carriers and facilities that offer their communications services along the Philadelphia to Harrisburg line.  Zayo provides network services to these customers.

129.    Amtrak knows that Zayo's business relies on creating and maintaining telecommunications infrastructure and leasing capacity to customers.

130.    Amtrak knows that any action it takes converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and ability to provide communications services to its customers will interfere with and substantially harm Zayo's relationships with its customers.

131.    Zayo has been and will sustain damages by Amtrak's intentional interference with its business relations in the form, among other things of lost business opportunities, reputational harms, loss of goodwill, and loss of customers.

132.    Amtrak committed intentional interference with Zayo's business relations by attempting to prevent Zayo from providing service to its customers.

133.    Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's intentional interference with business relations.

## COUNT X

### (Fraud)

134.   Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

135.   Amtrak represented that it wanted Zayo to provide drafts of its notices and intent to Amtrak's legal department and that Zayo and Amtrak would execute the final versions of approvable drafts.  Amtrak represented that these drafts constituted notice of intent pursuant to the agreements between the parties.

136.   This representation altered the contractual understanding between the parties.

137.   But Amtrak knew that it would not accept this method as sufficient notice and that it instead intended to convert, take title to, and interfere with Zayo's network and ability to provide service along the Philadelphia to Harrisburg line.

138.   Amtrak intended that its representations would deceive Zayo so that Amtrak could take title to Zayo's network.

139.   Zayo relied on Amtrak's representations and the renewal conduct it had engaged in with Amtrak on multiple occasions.

140.   Amtrak also repeatedly represented that it was willing to work with Zayo to renew the Agreement and that it would accept a continuation of the Agreement that included market rate fee terms.

141.   This representation was material and impacted Zayo's network, property rights, contractual commitments, and good will and reputation.

142.   Amtrak knew that it would not renew, extend or otherwise continue the Agreement and that it instead intended to convert, take title to, and interfere with Zayo's network and ability to provide service along the Philadelphia to Harrisburg line.

143.   Amtrak intended to deceive Zayo with its representations and cause Zayo to engage in futile negotiations with Amtrak regarding the Agreement instead of preserving its rights under the Agreement.

144.   Zayo relied on Amtrak's representations that it would work with Zayo to negotiate a continuation of the Agreement.

145.   Amtrak committed fraud by falsely representing many material facts to Zayo with knowledge that they were false and the intent to deceive Zayo in order to take over its communications network.

146.   Zayo has been and will continue to be harmed by Amtrak's fraud.

147.   Zayo is entitled to injunctive and declaratory relief, in addition to monetary damages, to redress Amtrak's fraud.

## COUNT XI

### (Declaratory Judgment Under 28 U.S.C. § 2201)

148.   Zayo incorporates by reference the allegations contained in Paragraphs 1 – 48 as if fully restated herein.

149.   An actual controversy has arisen and now exists between Zayo and Amtrak with respect to Amtrak's compliance with the Agreement and District of Columbia law.

150.   Zayo disputes the lawfulness of Amtrak's refusal to accept Zayo's notice of intent to renew and extend the Agreement and Amtrak's efforts to take title to its network.

151.     Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate under the circumstances.

### PRAYER FOR RELIEF

With respect to its Complaint, and based on the foregoing, Zayo prays for the following relief:

1.      Grant a temporary restraining order preventing Amtrak from converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and ability to provide communications services to its customers.

2.      Grant a preliminary injunction preventing Amtrak from converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and ability to provide communications services to its customers.

3.      Grant a permanent injunction preventing Amtrak from converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and ability to provide communications services to its customers.

4.      Declare that Amtrak breached the Agreement by denying automatic renewal of the Agreement and by improperly terminating the Agreement and converting Zayo's network.

5.      Declare that Amtrak breached the implied covenant of good faith and fair dealing by failing to uphold the intent of the parties and the spirit of the Agreement through its failure to acknowledge Zayo's renewal of the Agreement and falsely representing it would work with Zayo to correct the perceived error.

6.      Declare that Amtrak breached the quasi-contract created when Zayo provided notice to Amtrak of its intent to renew by denying Zayo's notice of intent to extend and renew the Agreement, improperly terminating the Agreement, failing to notify Zayo that Amtrak

deemed the notice deficient, and falsely representing that Amtrak would work with Zayo to correct the perceived error.

7.      Declare that Amtrak's discontinuance and impairment of Zayo's service by converting, taking title to, or interfering in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and ability to provide communications services to its customers violates the Communications Act of 1934, 47 U.S.C. § 214(c).

8.      Declare that Amtrak's discontinuance and impairment of Zayo's telecommunications network deprived Zayo of rights, privileges, and immunities granted by 47 U.S.C. § 214(c) and thus violate 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and/or *Bivens*.

9.      Declare that any of Amtrak's actions to convert, take title to, or interfere in any way with Zayo's network constructed along the Philadelphia to Harrisburg line and to destroy Zayo's ability to provide communications services to its customers deprive Zayo of its due process rights violation of the Fifth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and/or *Bivens*.

10.      Declare that Amtrak's actions to convert, take title to, or interfere in any way with Zayo's network constructed along the Philadelphia to Harrisburg line is an unlawful taking of Zayo's property without just compensation that violates the Fifth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and/or *Bivens*.

11.      Declare that Amtrak wrongfully converted Zayo's network constructed along the Philadelphia to Harrisburg line by exercising ownership and dominion and control over Zayo's network in an attempt to deny Zayo's right to its property.

12.      Declare that Amtrak intentionally interfered with Zayo's business relations by knowingly converting, taking title to, or interfering in any way with Zayo's network constructed

along the Philadelphia to Harrisburg line and consequently Zayo's ability to provide communications services to its customers.

13.    Declare that Amtrak committed fraud by knowingly and falsely representing the procedures it wanted Zayo to follow to signal its intent to renew and Amtrak's intent to work to renew, extend, and continue the Agreement, intending that Zayo would rely – as it did – on Amtrak's fraudulent representations so that Amtrak could improperly and unlawfully wrest control of its network.

14.    Declare that Zayo renewed the Agreement for a renewal term extending until May 1, 2030.

15.    Award Zayo monetary damages in an amount proven at trial.

16.    Award Zayo costs and attorney's fees, to the fullest extent permitted by law, including but not limited to costs and fees recoverable under 42 U.S.C. §§ 1983 and 1988 and/or *Bivens*.

17.    Award Zayo any and all additional relief that the Court deems just and proper.

Respectfully submitted,

*w/permission AG*

_____
/s/ Paul A. Werner

Paul A. Werner (Bar No. 482637)
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006-6801
(202) 747-1900

*Counsel to Zayo Group, LLC*

This 1st day of May, 2015.

<u>CERTIFICATE OF SERVICE</u>

This will certify that a true and correct copy of the foregoing, together with a copy of all

supporting exhibits, were served upon counsel for Defendant as follows:

BY EMAIL

      Counsel for Amtrak

           Eleanor D. Acheson
           Vice President, General Counsel and Corporate Secretary
           Law Department
           National Railroad Passenger Corporation (Amtrak)
           60 Massachusetts Avenue N.E.
           Washington, D.C. 20002

           Vincent Brotski, Esq.
           Law Department
           National Railroad Passenger Corporation (Amtrak)
           60 Massachusetts Avenue N.E.
           Washington, D.C. 20002

W/permission AG

May 1, 2015                            _____/s/ Paul A. Werner_____
                                 Paul A. Werner